IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
11/7/2023
JEFFREY P. COLWELL, CLERK

Criminal Case No.    1:23-cr-00461-NYW

UNITED STATES OF AMERICA,

　　Plaintiff,

v.

ALEX DEE, f/k/a ALEX DOWLATSHAHI,

　　Defendant.

## INDICTMENT

The Grand Jury charges that:

At all times material to this Indictment unless otherwise specified:

### COUNT 1
### Conspiracy
### (18 U.S.C. § 1349)

1.　　From at least in or around January 2017, through in or around June 2019, in the State and District of Colorado and elsewhere, the defendant ALEX DEE, with other persons known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree to commit the offense of wire fraud in violation of Title 18, United States Code, Section 1343.

### Background

Relevant Entities and Individuals

2.　　Defendant, ALEX DEE, was a resident of Laguna Hills, California.

3.　　Brian Kaplan was a resident of Fort Collins, Colorado.

1

4. Jerrold Maurer was a resident of North Belmore, New York.

5. Co-conspirator 1 ("CC-1") was a resident of Cookeville, Tennessee.

6. 8 Figure Dream Lifestyle LLC ("8FDL") was a Wyoming limited liability company with its registered address at P.O. Box 3832, Cookeville, Tennessee. DEE, Kaplan, Maurer, and CC-1 were founders and members of 8FDL. Between in or around January 2017 and in or around December 2018, 8FDL operated in the District of Colorado and elsewhere.

7. OEA LLC ("OEA") d/b/a Online Entrepreneur Academy was an Arizona limited liability company with its registered address at 4400 N. Scottsdale Road, Suite 309, Scottsdale, Arizona. DEE, Kaplan, and Maurer were founders of OEA.

8. Millionaire Mind Enterprises LLC ("Millionaire Mind") was a Delaware limited liability company with its registered address in Fort Collins, Colorado. Kaplan was a member of Millionaire Mind and served as its registered agent in Colorado. Kaplan, and others, transacted business through Millionaire Mind for 8FDL and OEA. Millionaire Mind had a Wells Fargo checking account ending in x5345, and Kaplan was a signatory on the account.

9. Spirit Consulting Group Inc. ("Spirit Consulting") was a Texas corporation with its registered address in Wylie, Texas and Laguna Hills, California. DEE transacted business through Spirit Consulting for 8FDL and OEA. Spirit Consulting had a Wells Fargo checking account ending in x3600. DEE had access to and control over the account.

10. JL Net Bargains, Inc. ("JL Net Bargains") was a New York corporation with its registered address in North Bellmore, New York. Maurer was the president and sole shareholder of JL Net Bargains. Maurer transacted business through JL Net Bargains for

8FDL and OEA.

11. Kappy Enterprises, LLC ("Kappy Enterprises") was a Colorado limited liability company with its registered address in Fort Collins, Colorado. Kaplan organized and was the sole member of Kappy Enterprises. Kaplan transacted business through Kappy Enterprises for 8FDL and OEA.

Relevant Background on Pyramid Schemes

12. A "pyramid scheme" is an illegal marketing or sales program in which participants pay money in return for the opportunity to be compensated for recruiting other people to join the program. Pyramid schemes can involve a seemingly legitimate business that may in fact sell a product, but participants derive the majority of their compensation from convincing new participants to buy into the program, not from legitimate sales of a product. These schemes typically promise substantial returns for doing little beyond paying to join the program and convincing others to do the same. Pyramid schemes inevitably collapse because they require an ever-expanding base of new participants for older participants to realize a return on their initial investments.

**Purpose of the Conspiracy**

13. The purpose of the conspiracy was for DEE, Kaplan, Maurer, CC-1, and others, to unlawfully enrich themselves by (a) operating illegal pyramid schemes under the names of 8FDL and OEA; (b) making false and material misrepresentations and omissions to sell memberships in 8FDL and OEA; and (c) concealing the conspiracy.

**Manner and Means of the Conspiracy**

Acting interdependently, DEE, Kaplan, Maurer, CC-1, and others carried out the conspiracy using, but not limited to, the following manner and means:

14. Beginning in or around January 2017 through in or around June 2019, DEE,

3

Kaplan, Maurer, CC-1, and others, agreed to start and operate an illegal pyramid scheme under the name 8FDL, which they claimed to be an online-marketing business that could generate substantial income for those who joined the company. Individuals who joined the company were called members and, by buying into the company, members purchased the right to sell memberships to others. A member was entitled to keep all or a portion of the new fees generated by a sale of a membership to a new victim-participant. 8FDL membership included access to digital products, such as online instructional videos, but the videos were mostly worthless and designed to be window dressing to give 8FDL the veneer of legitimacy. The products were not the focus of sales pitches to potential new members.

15. DEE and his co-conspirators designed 8FDL to have a tiered membership structure, with the fees for a membership ranging from $2,000 to $21,000. Initially, new members had to pass up the fees from their first sales to whomever recruited them. For subsequent sales, a member was only permitted to keep the fees for new sales he or she generated up to the amount of his or her own membership level. Any fees in excess of their membership level would be passed up the pyramid to a member at the higher level. This encouraged all members to buy in at the highest tier. Additionally, all new members were required to pay an administrative fee, ranging from $395 to $1,495, depending on the membership tier being purchased. The administrative fees were paid to CC-1, and then a portion of those fees was divided among DEE, Kaplan, and Maurer.

16. In furtherance of the conspiracy, DEE and his co-conspirators sent and caused to be sent marketing materials via interstate wires, including emails, robocalls, Webinars and promotional videos, to potential victim-participants, with the intention of inducing those victim-participants to purchase 8FDL memberships.

4

17. As part of the conspiracy, the marketing materials made material misrepresentations regarding the amounts members could earn by joining 8FDL. For example, emails targeting new victim-participants falsely indicated that typical consumers with no prior skills or experience could easily earn between $5,000 and $10,000 in 10 to 14 days after joining the program, and that most members were averaging 2-3 sales in their first 30-45 days. Additionally, DEE and his co-conspirators falsely represented to victim-participants that 8FDL was not a pyramid scheme.

18. In furtherance of the conspiracy, DEE and his co-conspirators also posted videos and hosted webinars for interested victim-participants in which the same false representations were made regarding the financial success of 8FDL members. These videos were coordinated among the co-conspirators and were made to induce victim-participants to purchase memberships in 8FDL.

19. Also, in furtherance of the conspiracy, the marketing materials and videos described above were materially misleading because they failed to disclose to victim-participants the substantial fees that members had to pay to successfully use the 8FDL marketing tools, including by purchasing lead lists to send emails and robocalls and automated dialing and email services. These fees could cost several thousands of dollars a month.

20. DEE was largely responsible for drafting scripts used in audio and video recordings and templates for emails and text messages that were used to disseminate these false representations to victim-participants.

21. In reality, and at all times known to DEE and his co-conspirators, only a very small minority of members in 8FDL ever made a single sale. Furthermore, an even smaller percentage of members earned the amounts described in the marketing

5

materials. DEE and his co-conspirators nonetheless disseminated these fraudulent marketing materials to induce victim-participants to purchase 8FDL memberships.

22. As a result of the conspiracy, DEE and his co-conspirators obtained millions of dollars from the sales of 8FDL memberships.

23. In furtherance of the conspiracy, in or around November 2018, DEE restructured 8FDL as OEA, due in part to the legal risk of continuing to operate 8FDL, complaints about 8FDL, and the negative reputation of 8FDL. DEE suggested to Kaplan and Maurer that they form the new company and transition members from 8FDL to OEA. Kaplan and Maurer, and others, agreed to form and operate OEA and ultimately cease operating 8FDL. However, after deciding to form OEA, DEE continued to market and sell 8FDL memberships to new victim-participants. DEE, Kaplan, Maurer, and others, planned to operate OEA similarly to 8FDL as an illegal pyramid scheme.

24. In furtherance of the conspiracy, on or around December 7, 2018, Kaplan filed an Articles of Amendment to Articles of Organization for OEA with the Arizona Corporation Commission.

25. OEA ultimately ceased operations in or around June 2019.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-5
### Wire Fraud and Aiding and Abetting
### (18 U.S.C. §§ 1343, 2)

26. The Grand Jury re-alleges and incorporates Paragraph 2 through 25 of this Indictment.

27. On or about the dates set forth below, ALEX DEE, in the State and District of Colorado and elsewhere, with intent to defraud, having devised, intended to devise, and participated in a scheme and artifice to defraud, and to obtain money

and property by means of materially false and fraudulent pretenses and omissions, and aided and abetted the same, did, for purposes of executing the scheme and artifice, cause to be transmitted and aided and abetted another who caused to be transmitted, by means of wire communication in interstate commerce, as set forth below:

| Count | Date (on or about) | Description of Wire |
|---|---|---|
| 2 | November 13, 2018 | An email chain sent via interstate wire among DEE and Maurer (both outside the District of Colorado) and Kaplan (within the District of Colorado) in which they discuss the transition from 8FDL to OEA, and Maurer said, "[f]or months now planning OEA, Brian and I both had concerns in good faith still promoting and enrolling new members into 8FDL especially since we knew what was to come." DEE responded that "I know we all need to make money . . . we all have 8FDL membrs on our lists and they're not going to trust us if we're marketing two companies that are competitive." |
| 3 | November 19, 2018 | Electronic funds transfer of $3,000 from the Millionaire Mind Wells Fargo bank account ending in x5345 (within the District of Colorado) to the Spirit Consulting Wells Fargo bank account ending in x3600 (outside the District of Colorado), which constituted payments related to 8FDL. |
| 4 | November 24, 2018 | A Voxer text message sent by DEE (from outside the District of Colorado) to Maurer and Kaplan (within the District of Colorado) in which DEE indicated that 8FDL members only had a "10% or less success rate." |
| 5 | November 30, 2018 | Electronic funds transfer of $4,000 from the Millionaire Mind Wells Fargo bank account ending in x5345 (within the District of Colorado) to the Spirit Consulting Wells Fargo bank account ending in x3600 (outside the District of Colorado), which constituted payments related to 8FDL. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE

1. Upon conviction of the violations alleged in Counts 1 through 5 of this Indictment, in violation of Title 18, United States Code, Sections 1343, 1349, and 2, Defendant DEE shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all of their right, title, and interest in all property constituting and derived from any proceeds they obtained directly and indirectly as a result of such scheme, including, but not limited to, a sum of money representing the amount of proceeds the Defendant obtained as a result of the fraudulent scheme.

2. If any of the property described above, as a result of any act or omission of Defendant:

    a) cannot be located upon the exercise of due diligence;

    b) has been transferred or sold to, or deposited with, a third party;

    c) has been placed beyond the jurisdiction of the Court;

    d) has been substantially diminished in value; or

    e) has been commingled with other property which cannot be subdivided without difficulty;

//
//
//
//

Case No. 1:23-cr-00461-NYW *SEALED*   Document 1   filed 11/07/23   USDC Colorado   pg 9
of 9
Case 2:24-mj-00008-MLP   Document 1   Filed 01/10/24   Page 9 of 11

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of Defendant up to the value of the forfeitable property.

                                                                                          A TRUE BILL

                                                                             *Ink signature on file in Clerk's Office*
                                                                             Foreperson

GLENN S. LEON
Chief, Fraud Section

_____
Brandon Burkart
Andrew Jaco
Trial Attorneys, Fraud Section
United States Department of Justice
1400 New York Ave., NW
Washington D.C. 20005
Telephone: (202) 341-6287
E-mail: brandon.burkart@usdoj.gov
Attorneys for the Government

9

| | |
|---|---|
| DEFENDANT: | Alex Dee, f/k/a Alex Dowlatshahi |
| AGE/YOB: | **48** |
| COMPLAINT FILED? | _____ Yes    ___X___ No |
| | If Yes, MAGISTRATE CASE NUMBER_____ |
| HAS DEFENDANT BEEN ARRESTED ON COMPLAINT? | __ Yes   _X_ No |
| OFFENSE(S): | <u>Count 1</u>:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) |
| | <u>Counts 2-5</u>: 18 U.S.C. § 1343 and 2 (Wire Fraud and aiding and abetting) |
| LOCATION OF OFFENSE: | Denver, Colorado, and elsewhere |
| PENALTY: | <u>Count 1</u>: NMT 20 years' imprisonment, $250,000 fine, or both; NMT 3 years' supervised release. |
| | <u>Counts 2-5</u>: NMT 20 years' imprisonment, $250,000 fine, or both; NMT 3 years' supervised release. |
| AGENT: | SA Misty Racimo, USPIS |
| AUTHORIZED BY: | Brandon Burkart and Andrew Jaco<br>U.S. Department of Justice Trial Attorneys |

ESTIMATED TIME OF TRIAL:

 X  five days or less; ___ over five days

THE GOVERNMENT

__ will seek detention in this case based on 18 U.S.C. § 3142(f)

The statutory presumption of detention <u>is not</u> applicable to this defendant.

1

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| United States of America<br>v.<br><br>ALEX DEE, f/k/a ALEX DOWLATSHAHI<br><br>_Defendant_ | )<br>)<br>)  Case No.  1:23-cr-00461-NYW<br>)<br>) |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_ Alex Dee                                                                                                                      ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to commit wire fraud, in violation of Title 18, United States, Code, Section 1349, and wire fraud, in violation of Title 18, United States Code, Section 1343.

Date: 11/07/2023                                                                    s/ N. Orlin, Deputy Clerk
                                                                                    _Issuing officer's signature_

City and state: Denver, CO                                                          Jeffery P. Colwell, Clerk of Court
                                                                                    _Printed name and title_

**Return**

This warrant was received on _(date)_ _____, and the person was arrested on _(date)_ _____
at _(city and state)_ _____.

Date: _____
                                                                                    _Arresting officer's signature_

                                                                                    _Printed name and title_